Robert Fogel v. Commissioner. Robert Fogel and Sylvia Fogel v. Commissioner.
Fogel v. Commissioner
Dockets Nos. 44016, 44017.
United States Tax Court
T.C. Memo 1955-185; 1955 Tax Ct. Memo LEXIS 157; 14 T.C.M. (CCH) 718; T.C.M. (RIA) 55185; June 30, 1955
*157 1. During the taxable years, the petitioner was a partner in several partnerships which engaged in the placing of wagers on horse races and in one bookmaking partnership which engaged in the acceptance of wagers on horse races. Held, on the facts, (a) the petitioner has not established that the betting losses sustained by one of the betting partnerships, Rozman, were correctly set forth in the partnership records; the amount of losses sustained by Rozman determined; (b) the petitioner has not established that K.F. and P., another betting partnership, sustained any of the net betting losses set forth in the partnership records; (c) the bookmaking partnership, Fogel Bros. Service, had "hits", for amounts payable to winning bettors, in the amounts set forth in the partnership books for 1948 and 1949; (d) the petitioner has not established that Fogel Bros. Service realized bookmaking income in 1950 in an amount less than 14 per cent of the wagers it accepted. 2. Held, the respondent's determination of fraud penalties under section 293(b) of the 1939 Code is disapproved. 3. Held, deficiencies for the years 1946 and 1947 are barred by the statute of limitations. Sol. Goodman, Esq., 1016 Union Trust Building, Cincinnati, Ohio, for the petitioners. Charles R. Hembree, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner has determined deficiencies in income tax and penalties as follows: Year
Deficiency
Sec. 293(b)
Sec. 294(d)
1946
$ 321.70
$ 160.85
$ 111.23
1947
32,664.53
16,332.27
5,560.00
1948
31,794.00
15,897.00
5,345.09
1949
28,342.70
14,171.35
4,551.80
1950
40,364.80
20,182.40
7,039.11
The principal question to be decided is whether the petitioner realized income from bookmaking and wagering in each of the taxable years in excess of the amounts reported in his income tax returns. The second question to be decided *159 is whether any part of any deficiency is due to fraud with intent to evade tax, under the provisions of section 293(b) of the 1939 Code. Also in issue are the additions to tax determined by respondent under the provisions of section 294(d) for failure to file declarations of estimated tax and for substantial underestimates of estimated tax. The petitioners also contend that the deficiencies for 1946 and 1947 are barred by the statute of limitations. Findings of Fact Robert and Sylvia Fogel are husband and wife, residing in Cincinnati, Ohio. Robert Fogel filed individual returns for 1946 and 1947, and Robert and Sylvia filed joint returns for 1948, 1949, and 1950, with the collector for the first district of Ohio. The issues in this proceeding involve only Robert Fogel, who hereinafter will be referred to as the petitioner. The statutory notice of deficiency for the years 1946 and 1947 was dated July 24, 1952. Petitioner's returns for 1946 and 1947 were filed on February 26, 1947, and February 25, 1948, respectively. During each of the taxable years, the petitioner was a partner in one or more of four enterprises engaged in gambling operations. Three of the partnerships, Rozman *160 Enterprise, Maylan Enterprises, and K.F. and P. Enterprises were handicapping enterprises engaged in the business of making bets on horse races. The fourth partnership, Fogel Bros. Service, engaged in the business of accepting horse race bets which were placed with several bookmakers with whom it had profit-splitting agreements. Rozman Enterprise During the years 1947 to 1950, inclusive, the petitioner was the controlling partner in Rozman Enterprise (hereinafter referred to as Rozman). The number of partners in Rozman at any one time varied between 5 and 7, and petitioner's share of partnership profits and losses ranged from 26 to 56 per cent. Petitioner did the handicapping and betting for Rozman. Approximately 90 per cent of Rozman's bets were placed with Bobben Enterprises, Newport, Kentucky, and the balance was placed by petitioner at race tracks and poolrooms. He placed more than one bet each day, the number of bets depending upon how many horses he believed to be logical winners. Petitioner was assisted in his betting operations by Simon Gertzman. Gertzman received a salary from Rozman; he also had an interest in Rozman's profits of 2 per cent from October 19, 1947 to *161 December 31, 1949, and of 5% during 1950. Petitioner made his racing selections at Bobben's office with the help of Gertzman, who prepared and collected information for petitioner on past performance of horses, track conditions, weights to be carried, odds, and names of jockeys. Gertzman kept daily records which showed the names of the horses bet on by petitioner, the amounts and positions wagered, and whether the bet won or lost. At the end of each day, he checked his record with the records kept by Bobben. If the two records were in accord, he computed the net amount of petitioner's win or loss for the day's activity and then destroyed his detailed record. Gertzman retained these net win or loss figures until the end of the week, when he gave them to petitioner together with certain notations concerning expenses. Also at the end of each week, the petitioner entered in Rozman's permanent records certain net win or net loss figures for each day of the preceding week. The permanent record kept in each year by petitioner for Rozman consisted of a bound, hard-cover record book, containing 6-column pages. For each day, the petitioner entered one figure for the net win or loss from betting, *162 and figures for expenditures for salary, racing forms, and miscellaneous. A net win figure was entered for the day to indicate that the amounts petitioner won on his winning wagers exceeded the amounts lost on losing wagers; a net loss for the day indicated that his losses for the day allegedly exceeded his winning. He also entered a cumulative net win or loss total for the month, computing expenses as losses. The following is illustrative of the entries made in Rozman's permanent records: 1947
Cards &
Win
Lose
Salaries
Forms
Misc.
Total
Sept. 1
$ 552.25
W $ 552.25
Sept. 2
608.10
W 1,160.35
Sept. 3
840.00
W 2,000.35
Sept. 4
1,127.00
W 3,127.35
Sept. 5
$3,231.00
L 103.65
Sept. 6
1,193.00
$ 50.00
$ 18.90
L 1,465.55
100.00
Other than the daily net win and loss figures recorded in his permanent records, petitioner retained no details of his Rozman betting operations, such as the name of the horses, the total amount of bets placed, total winnings and total losses. Once each month, petitioner mailed or took to Ruben E. Cohen, a certified public accountant, a sheet *163 containing the same figures as Rozman's permanent record book, except for the omission of the cumulative total column. Cohen prepared Rozman's partnership returns from summaries which he compiled from the monthly sheets. The figures on Rozman's returns agreed with those in the permanent record book, monthly sheets, and summaries. Rozman's returns reported "Gross receipts from business or profession," business expenses, and net income in the following amounts: Gross
Business
Year
Receipts
Expenses
Net Income
1947
$28,767.50
$ 871.00
$27,896.50
1948
27,290.40
1,038.45
26,251.95
1949
5,585.45 [1]
9,747.85
(4,162.40) [1]
1950
30,508.75
869.50
29,639.25
The amounts reported for "Gross receipts from business or professior" represented the excess for the year of the daily net wins recorded by the petitioner over the daily net losses, and were computed by Cohen as follows: 1947
1948
1949
1950
Total Daily - net wins
$141,893.20
$188,664.90
$151,589.75
$146,074.20
Total Daily - net losses
113,125.70
161,374.50
146,004.30
115,565.45
Net Wins for Year (Gross
$ 28,767.50
$ 27,290.40
$ 5,585.45
$ 30,508.75
receipts)
*164 The petitioner made distributions of profits to his partners whenever he thought he had more cash than was necessary for his betting operations. He kept no record of these distributions. The only records relating to Rozman's operations that were submitted to respondent's agents in the course of their examination were the monthly statements which had been given to Cohen by petitioner, and the summaries prepared from them by Cohen. The respondent disallowed, for lack of substantiation, all the daily net losses shown on the monthly statements, and increased Rozman's net income for each of the taxable years in the amount of the disallowed daily net losses, namely, $113,125.70 in 1947; $161,374.50 in 1948; $146,004.30 in 1949; and $115,565.45 in 1950. As a result of this redetermination of Rozman net income, respondent increased petitioner's distributive share of Rozman net income as follows: Increase
Deter-
Deter-
Reported by
mined by
mined by
Year
Petitioner
Respondent
Respondent
1947
$12,502.79
$51,579.24
$39,076.45
1948
12,803.76
76,507.30
63,703.54
1949
(1,967.48)
62,658.60
64,626.08
1950
17,374.11
78,623.80
61,249.69
*165 Rozman sustained betting losses in the taxable years 1947 to 1950, inclusive, as follows: Year
Betting Losses Sustained
1947
$ 79,000
1948
100,000
1949
89,000
1950
78,000
Maylan Enterprises During 1947, petitioner was a partner in another betting venture, Maylan Enterprises (hereinafter referred to as Maylan). Petitioner's brother, Max Fogel, was the controlling partner in, and did the betting for Maylan. Maylan was in existence from June 23 to November 29, 1947, and consisted of 6 partners from June 23 to October 31, and 5 from November 1 to November 29. Petitioner's interest in Maylan's profits during these two periods was 6 and 6.4 per cent, respectively. At the end of each month, Ruben Cohen received from one of the Maylan partners a single page which listed either a "win" or a "lose" figure for each business day of the month, and figures showing payments for salaries, racing cards and forms, and miscellaneous expenses. The following are illustrative of the entries shown on the monthly sheets received by Cohen: - 1947 -
Win
Lose
Salaries
C & F Papers
Misc.
Sept. 1
$ 927.25
Sept. 2
658.10
Sept. 3
$ 735.00
Sept. 4
3,165.00
Sept. 5
7,870.00
Sept. 6
1,937.00
$ 100.00
$ 12.00
60.00
*166 Cohen compiled summaries of these monthly sheets and prepared Maylan's return from the monthly sheets and summaries. Copies of the monthly sheets submitted to Cohen were retained by Maylan. These retained copies contained an additional "Total" column in which the cumulative win or loss for the month was computed by subtracting the daily losses and expenses from the daily wins. Petitioner did not keep any records for Maylan and the person or persons who prepared the monthly statements did not testify in these proceedings. Maylan reported net income in 1947 of $13,306.50, which was determined by Cohen as follows: Total Win
$105,561.40
Total Loss
91,859.90
$ 13,701.50
Less expenses for telephone,
supplies and accountant's
fees
395.00
Net Income
$13,306.50
The total "win" and "loss" figures are, respectively, the sums of the daily "win" and daily "lose" entries on the monthly statements. The only records relating to Maylan's operations that were submitted to respondent's agents consisted of Cohen's copies of the monthly statements, and his summaries thereof. The respondent disallowed, for lack of substantiation, the total loss shown for losing days on *167 the monthly statements, namely, $91,859.90, and increased Maylan's net income in that amount, from $13,306.50 to $105,166.40. As a result of this adjustment, respondent increased petitioner's distributive share of Maylan income in the amount of $5,514.84, from the $597.48 reported in his return, to $6,112.32. K.F. and P. Enterprises During the year 1950, petitioner was a partner in a third betting operation, K.F. and P. Enterprises (hereinafter referred to as K.F. and P.). The number of partners in K.F. and P. in 1950 varied between 5 and 6. Petitioner's interest in K.F. and P. profits was 3 per cent in January; 5 per cent from February to May, inclusive; and 7 per cent for the balance of the year. The interest of petitioner's brother Max Fogel in K.F. and P.'s profits ranged from 58 to 65 per cent during 1950, and Max Fogel was in charge of the handicapping and betting for K.F. and P.K.F. and P. also owned several horses which it entered in races during 1950. At the knd of each month, Jack Juresman, an accountant, received from someone in K.F. and P. a daily sheet for each day of the partnership's operations. The sheet showed one win or loss figure for the day's operations, *168 and a figure for expenses, but contained no details as to the betting activity represented by the win or loss figure, such as names of horses, amounts wagered, and pay offs on winning bets. Kuresman entered the amounts shown on the daily sheet in a journal, and prepared the 1950 partnership return for K.F. and P. from the journal and from a summary thereof which he had prepared. Petitioner did not keep any records for K.F. and P., and the person or persons who prepared the daily sheets for transmission to Kuresman did not testify in these proceedings. K.F. and P. reported net income from its operations in 1950 of $61,268.85, which was determined by Kuresman as follows: Total Wins
$238,447.00
Total Losses
164,603.00
$ 73,844.00
Less expenses
6,629.42
Profit from
$ 67,214.58
Betting
Loss on Race
horse opera-
tions
5,945.73
Net Income
$ 61,268.85
The figures for total wins and losses are, respectively, the sums of the "win" or "lose" figures appearing on the daily sheets forwarded to Kuresman at the end of each month. The only records relating to K.F. and P.'s activities that were submitted to respondent's agents consisted of the daily sheets sent *169 to Kuresman by the K.F. and P. partners, and the journal and summaries prepared by Kuresman from the figures appearing on such sheets. The respondent disallowed, for lack of substantiation, the total amount of losses shown on the daily sheets for losing days, namely, $164,603. The respondent allowed K.F. and P. additional deductions totalling $3,466, thereby increasing K.F. and P. net income in the net amount of $161,137. As a result of this adjustment, respondent increased petitioner's distributive share of K.F. and P. income in the amount of $10,138.13, from the amount of $1,496.94 reported in his return, to $11,635.07. Fogel Bros. Service Petitioner was a partner in a bookmaking enterprise, Fogel Bros. Service (hereinafter referred to as Fogel Bros.), during the taxable years 1946 to 1950, inclusive. Petitioner had a one-third interest in Fogel Bros. during 1946, and a one-half interest during the years 1947 to 1950, inclusive. In 1946, petitioner's partners were his brothers, William and Max. Max was his only partner during the years 1947 to 1950. During the taxable years, William acted as manager of the enterprise, under petitioner's supervision, and Max took no active part *170 in the conduct of the business. Fogel Bros. operated from 2 or 3 "clearing houses" in Newport, Kentucky, in conjunction with a number of bookmakers located in Cincinnati, Ohio. Fogel Bros. had arranged for the location of the bookmakers, and its understanding with them was that the net profits from wagers accepted by the bookmakers and telephoned to the "clearing houses" would be evenly divided. The number of bookmakers for whom entries appear in Fogel Bros. records ranges between 4 to 10 monthly. Fogel Bros.' arrangement with the bookmakers was substantially as follows: A bookmaker, having accepted a wager, would telephone to one of the clearing houses, where a "sheet writer", or clerk, employed by Fogel Bros. would list the details of the wager on a sheet of paper approximately 8 by 10 inches in size containing printed horizontal lines. The details written down by the sheet writer consisted of the name of the horse, the amount wagered, the win, place, or show position selected, and the bettor's initials. If a wager won, it was circled on the clerk's sheet. At the end of the day, each sheet writer totaled the "play" or total wagers shown on his sheet for the day, the amount of *171 "hits", or payoffs due on winning bets, and the difference between the two figures. If the "hits" exceeded the "play", the result for the day was a net loss; if the "play" was larger, the difference was a net win for the day. The sheet writers gave petitioner's brother, William, the figures for each bookmaker's "play", "hits", and net win or loss, and during the years 1946 to 1949, inclusive, these figures were entered in Fogel Bros.' permanent record, described below, by William or under his supervision. The clerk's sheets showing the wagering details were destroyed by William or the clerks after 2 or 3 weeks to avoid seizure in the event of a raid by police authorities. Petitioner, or Fogel Bros., employed one or more "collectors" who collected the sums due Fogel Bros. from the bookmakers or paid the bookmakers any amounts due from the partnership. Collections or payments usually were made each day or at least once each week, depending upon the individual bookmaker's "credit" with petitioner. Fogel Bros.' permanent record consisted of a ledger with 12-column printed pages. The daily activities of each bookmaker for a month were recorded on a single page, and the pages were arranged *172 by the month and by the year. In addition to the totals for "play", "hits", and net win or loss, entries were made in the permanent record to reflect cash collections from or payments to each bookmaker, and the weekly and monthly net amounts of such cash transactions. The following is illustrative of the monthly information entered for the bookmakers: "January 1950
Ted
Cash
Play
Hits
Win
Lose
Collect
Pay
Total
1. 143.
100.
43.
2. 198.
36.
162.
3. 112.
102.
10.
4. 123.
102.
21.
5. 109.
135.
26.
6. 246.
206.
40.
139.
25.
114.
7. 109.
171.
62.
49.
8. 169.
168.
1.
9. 117.
97.
20.
10. 81.
77.
4.
11. 146.
146.
0.
12. 218.
191.
27.
(49.)
13. 195.
123.
72.
14. 172.
116.
56.
15. 101.
83.
18.
16. 97.
55.
42.
17. 134.
135.
1.
18. 212.
269.
57.
113.
25.
88.
19. 180.
200.
20.
20.
20. 123.
110.
13.
21. 121.
81.
40.
22. 103.
116.
13.
23. 137.
97.
40.
24. 221.
187.
34.
100.
25.
55.
257.
- 49.
208"
The entries for cash collected from and paid to the bookmakers do not correspond to their net wins *173 and losses, or to 50 per cent of such net wins and losses. In a large number of instances, the record reflects a net cash payment for the week to a bookmaker whose "play" for the week exceeded "hits." The following is a summary of the 1948 monthly totals in Fogel Bros.' records for net wins or losses and cash collected or paid for a bookmaker listed as "7": Wagers
Cash
Month
Win
Lose
Collect
Pay
Jan.
$ 183.55
$258.85
Feb.
137.00
200.00
Mar.
266.25
10.00
Apr.
842.00
$ 454.50
May
657.60
492.00
June
343.70
101.00
July
$29.40
344.10
Aug.
631.95
236.50
Sept.
42.00
170.50
Oct.
Nov.
Dec.
Totals
$3,104.05
$29.40
$1,353.50
$913.95
29.40
913.95
Net Winnings and Cash
Collected
$3,074.65
$ 439.55
The Fogel Bros.' permanent record was maintained by William Fogel, or under his supervision, in 1946, 1947, 1948 and 1949, and after that time by two unidentified sheetwriters. At the end of each year, the record was given to Ruben Cohen, who prepared Fogel Bros.' partnership returns for the taxable years. Fogel Bros. reported the following gross profit and net income or loss, for the *174 taxable years: 1946
1947
1948
1949
1950
Gross Profit
$34,968.20
$18,895.20
$14,127.75
$13,801.30
$16,229.68
Net Income (Loss)
12,655.50
(3,816.95)
(2,482.95)
(2,448.15)
( 158.05)
Cohen apparently computed Fogel Bros.' gross profit on the basis of the entries in the ledger for cash collections and payments, and not on the basis of the entries for total "play," "hits," and net wins and losses. The figures for the cash collections and payments, and of other items of income reflected on the partnership records, are as follows: 1946
1947
1948
1949
1950
Cash collected
$33,669.90
$22,358.05
$17,143.15
$16,357.85
$18,004.50
Cash paid out
1,950.30
1,849.70
983.70
90.00
Net cash
$31,719.60
$20,508.35
$16,159.45
$16,267.85
$18,004.50
collected
Losing Layoff
3,322.60
1,613.15
2,031.70
2,466.55
1,886.40
Bets
$28,397.00
$18,895.20
$14,127.75
$13,801.30
$16,118.10
"Personal" wagers
6,571.20
won
Other
111.58
Gross Profit
$34,968.20
$18,895.20
$14,127.75
$13,801.30
$16,229.68
The only record relating to Fogel Bros. that was submitted to respondent's agents was the ledger *175 book. The respondent redetermined Fogel Bros.' net income on the basis of the figures for total "play" recorded in the partnership records, and not by using the entries for cash collections and payments. The respondent determined that the figures for "hits" in the ledger could not be substantiated, and that an allowance for "hits" equal to 86 per cent of total "play" was reasonable. In computing net income, respondent accepted the figures shown in Fogel Bros.' records for winnings on "personal" wagers, losses on lay-off bets, and expenses, and redetermined partnership net income as follows: 1946
1947
1948
1949
1950
Total Play
$519,239.25
$567,632.99
$385,148.70
$368,928.45
$401,722.75
Less Hits
446,545.75
488,164.37
331,227.88
317,278.47
345,481.57
Profit on Wagers
$ 72,693.50
$ 79,468.62
$ 53,920.82
$ 51,649.98
$ 56,241.18
Fogel Bros.'
$ 36,346.75
$ 39,734.31
$ 26,960.41
$ 25,84.99
$ 28,120.59
Share (50%)
Personal Wagers
6,571.20
Won
Lay-off Wagers
(3,322.60)
(1,613.15)
(2,031.70)
(2,466.55)
(1,886.40)
Lost
Gross Profit
$ 39,595.35
$ 38,121.16
$ 24,928.71
$ 23,358.44
$ 26,234.19
Expenses
22,312.70
22,712.15
16,610.70
16,249.44
16,387.73
Net Income
$ 17,282.65
$ 15,409.01
$ 8,318.01
$ 7,109.00
$ 9,846.46
*176 The respondent's determination of Fogel Bros.' net income resulted in the following increases in partnership net income and in petitioner's distributive share of partnership net income: Partnership Income (Loss)
Petitioner's Distributive Share
Increased
Total
Increased
Total
by
per
by
per
Year
Reported
Respondent
Respondent
Reported
Respondent
Respondent
1946
$12,655.50
$ 4,627.15
$17,282.65
$4,218.50
$1,542.38
$5,760.88
1947
(3,816.95)
19,225.96
15,409.01
(1,908.48)
9,612.99
7,704.51
1948
(2,482.95)
10,800.96
8,318.01
(1,241.48)
5,400.48
4,159.00
1949
(2,448.15)
9,557.15
7,109.00
(1,224.07)
4,778.57
3,554.50
1950
( 158.05)
10,004.51
9,846.46
( 79.05)
5,002.28
4,923.23
The "play" and "hits" recorded in Fogel Bros.' ledger for 1948 and 1949 correctly reflect the partnership's bookmaking activities for those years. In 1950, Fogel Bros. did not sustain "hits" in excess of 86 per cent of the "play" recorded in its ledger. Petitioner and his brother Max operated Fogel Bros. during the years 1943 and 1944. Their returns for these years were examined by respondent's agents, and they *177 were informed by a letter dated December 16, 1946, from the Internal Revenue Agent in charge, Cincinnati Division, that their returns for 1943 and 1944 were accepted as filed. No part of any deficiency in any taxable year is due to fraud with intent to evade tax. Opinion The principal question to be decided is whether the respondent correctly determined that petitioner's distributive shares of income from 4 wagering and bookmaking partnerships in each of the taxable years were greater than the amounts reported in his returns. Also in issue are penalties and additions to tax determined by the respondent under section 293(b) and 294(d) of the Code. The petitioner contends that the statute of limitations bars the deficiencies for 1946 and 1947. Under the principal issue, the narrow question is whether the petitioner has substantiated the betting and bookmaking losses which were claimed in the computation of the partnerships' reported income. The other items which entered into the partnerships' reported income, such as the totals for the partnerships' winning bets (in the case of Rozman, Maylan, and K.F. and P.), wagers accepted (in the case of Fogel Bros.), and expenses, have *178 not been questioned by the respondent, and the petitioner has not contested several minor adjustments determined by respondent in connection with the ownership of certain race horses by K.F. and P. The income reported by each partnership was computed by Cohen or Kuresman, who were accountants, on the basis of certain summary records furnished by the partners. Cohen and Kuresman had no personal knowledge of the accuracy or reliability of the figures contained in the records given to them. In the case of the wagering enterprises, Rozman, Maylan, and K.F. and P., these records contained only a single net win or loss figure which purported to summarize the net results of each partnership's entire betting operations for the day, without giving any of the underlying details, such as the number of bets made, horses bet on, amounts wagered, and amounts received on winning wagers. The daily net loss figures recorded in these records purportedly represent the amount by which betting losses for the day exceeded betting winnings. All of the losses represented by the net loss figures in the records of the three betting partnerships were disallowed by respondent on the ground that petitioner had *179 not established that the losses actually were sustained. In the case of Fogel Bros., the bookmaking partnership, the records furnished to Cohen contained a daily figure for total bets accepted, or "play" and a figure for total payoffs, or "hits", for each of the bookmakers with whom the partnership had agreed to divide profits. The records did not contain a list of the bets on which "hits" allegedly were sustained, the amounts of the individual "hits", or the identity of the winning bettors. The Fogel Bros.' record also contains entries for cash collected from or paid to each bookmaker. These entries purportedly represent the division of profits and losses between Fogel Bros. and the bookmakers, and were the basis upon which the partnership returns were prepared. Respondent redetermined Fogel Bros.' income on the basis of the "hit" and "play" figures in its record, allowing as "hits" an amount equal to 86 per cent of the "play" and disallowing, as unsubstantiated, the "hits" entered in the record in excess of that amount. The petitioner contends that the respondent cannot accept as accurate that portion of the partnership records which reflects winning wagers and wagers accepted, *180 while at the same time disallowing the losses and "hits" recorded in the records. This contention was rejected in , where it was pointed out that the net gain figures recorded in a bet taker's records were, in a sense, admissions against interest and thus more reliable than the net loss figures. The reliability of the net loss and "hit" figures in the summary record as proof of losses and "hits" actually sustained depends upon whether the detailed betting sheets prepared each day correctly set forth the details of each individual loss and the computation of any net loss; and, also, upon whether the net loss and "hit" figures shown on the detailed daily sheets were accurately transcribed to the summary records. The petitioner had the burden of proving that the losses claimed were in fact sustained. The issue is a factual one and is to be decided on the basis of the evidence adduced. The detailed daily betting sheets have been destroyed, and the petitioner relies on oral testimony to establish the reliability of the net loss and "hit" entries in the retained summary records. Each of the partnerships involves a somewhat *181 different factual situation and will be discussed separately. Rozman The petitioner relies on his own testimony and that of Simon Gertzman to establish that the net loss figures in Rozman's records accurately reflect the net result of the betting activities for the days on which such net loss figures were entered. We do not accept this testimony as establishing that the daily net loss figures entered by petitioner substantiate the losses claimed by Rozman. In the first place, it is not clear from their testimony whether the entries made by petitioner were taken from the notations given to him by Gertzman, or from an entirely different set of memoranda which petitioner compiled independently. Gertzman testified that he destroyed his detailed betting record at the end of each day, and that he gave petitioner, at the end of each week, only daily net win or loss figures. Petitioner, on the other hand, admitted on cross-examination that he kept detailed betting records which were not destroyed until the end of the week. Moreover, petitioner's testimony that he accurately copied the net win and loss figures, whether in reference to the figures obtained from Gertzman or to the figures *182 contained in the detailed records maintained by himself, was at best self-serving, and, in our opinion, not worthy of any substantial weight. We conclude that petitioner has not proved that the retained Rozman summary records accurately reflect the betting losses sustained by Rozman, or that Rozman actually sustained losses in the amounts claimed in the computation of its reported net income. Respondent's determination implicitly allowed Rozman all betting losses sustained on days in which net wins were recorded, and on other days, losses equal to winnings. We are satisfied from the entire record, however, that Rozman did experience days on which losses exceeded winnings, and we hold that Rozman is entitled to losses, in addition to those allowed by respondent, in the amounts set forth in our Findings of Fact. In determining the amount of allowable losses, we have considered the entire record and borne heavily against petitioner, whose failure to maintain adequate records resulted in this controversy. ; see also Maylan The respondent determined that petitioner understated his income from Maylan *183 for the year 1947. For the reasons hereafter discussed, we hold that respondent's determination of deficiencies for the year 1947 is barred by the statute of limitations. Accordingly, no purpose will serve by a further discussion of Maylan's operations. K.F. and P. The respondent disallowed all the daily net losses which were taken into account by Jack Kuresman, K.F. and P.'s accountant, in computing the net income reported for K.F. and P. Kuresman prepared the partnership returns from summary sheets containing the daily net loss figures. The record is devoid of any evidence concerning the details of K.F. and P.'s betting activities, or the circumstances under which the summary sheets were prepared for Kuresman. Petitioner testified that he did not know who prepared the summary sheets, and the person or persons who did prepare the figures for Kuresman did not testify in this proceeding. The record affords no basis upon which to determine the accuracy or reliability of the net loss figures used by Kuresman. We hold that petitioner has failed to establish that K.F. and P. sustained any of the losses claimed. The respondent's determination with respect to K.F. and P. is approved. *184 Fogel Brothers Service The gross profit reported by Fogel Bros. for the taxable years was computed by Ruben Cohen on the basis of the ledger entries for cash collected from and paid to the bookmakers with whom the partnership did business. Cohen did not attempt to compute the partnership's bookmaking income by subtracting the "hits" from the total "play." Respondent recomputed the partnership's income on the basis of the figures for "play" shown in the record, allowing "hits" in each year equal to 86 per cent of the "play," and disallowing all "hits" each year in excess of 86 per cent. Petitioner's contention that the partnership correctly reported its income cannot be sustained. The cash transaction figures, purportedly representing collections from or payments to each of the individual bookmakers with whom the partnership had agreed to divide profits, cannot be reconciled with the entires recorded in Fogel Bros. record for the bookmakers' wins and losses. In many instances, payments in excess of collections are recorded for weeks in which the bookmakers realized winnings in excess of losses. For one bookie, identified only as "7," the record book shows "play" in excess of *185 "hits" for the year 1948 in the amount of $3,074.65, whereas the recorded net cash collections from him equalled only $439.55 for the year. These discrepancies have not been satisfactorily explained by petitioner, and we conclude that the petitioner has not established that the cash transaction figures in Fogel Bros. records correctly reflect the partnership income. Petitioner also contends that the respondent's allowance of "hits" equal to only 86 per cent of "play," instead of the full amount of "hits" recorded in the ledger, is arbitrary and unreasonable and cannot be sustained. Petitioner's position is that the "play" and "hit" figures were correctly and accurately recorded into the ledger by or under the supervision of William Fogel, the partnership's manager, from the sheetwriters' detailed daily sheets; and that if Fogel Bros. income is to be determined on the basis of the "play" and "hits" instead of the cash transaction figures, then all "hits" recorded in the ledger must be taken into account. With the exceptions noted below, we think the petitioner should be sustained. The acceptance of the ledger entries as proof of Fogel Bros. losses depends upon the credibility of William *186 Fogel's testimony. We have had the opportunity to observe his demeanor, and we feel that his sworn testimony that the "play" and "hit" figures were correctly transcribed by him or under his supervision should be accepted. We hold that the "hit" figures entered in the ledger for the years 1946 through 1949, inclusive, correctly reflect the results of Fogel Bros. bookmaking payoffs, and that respondent erred in disallowing "hits" in excess of 86 per cent of "play" in recomputing the partnership's income. The entries in Fogel Bros, ledger for 1950 were not made by or under William Fogel's supervision. Petitioner testified that two of the sheetwriters performed this work during 1950, but he did not recall their identities; and the person or persons who made the ledger entries in 1950 did not testify in this proceeding. On this state of the record, the petitioner has not established the accuracy or reliability of the "hits" entered in the ledger for 1950; nor has he established that respondent's allowance of "hits" equal to 86 per cent of "play" was erroneous. We hold that respondent did not err in disallowing all "hits" in excess of 86 per cent of "play" for 1950. The parties do not *187 agree as to the totals of "hits" and "plays" shown for any of the taxable years in Fogel Bros. ledger, and it is necessary that these amounts be recomputed by the parties under Rule 50. Fraud Penalties Respondent has determined 50 per cent penalties for each of the taxable years, under the provisions of section 293(b). The respondent has the burden of proving that part of any deficiency is due to fraud with intent to evade tax, and the evidence necessary to establish fraud must be clear and convincing. , certiorari denied, ; . The respondent points to the conceded intentional destruction of the detailed betting records of the various partnerships as evidence of fraudulent intent. However, we think the destruction of the records in this case is equally consonant with the desire of petitioner, his partners, and their employees to prevent the seizure of evidence of their illegal wagering activities by police authorities. Moreover, the record indicates that petitioner's records for years prior to those in issue had been examined by respondent's *188 agents; that no deficiencies were found; that those records were no more adequate or detailed than the records kept for taxable years; and that the petitioner adopted certain changes in record-keeping suggested by the respondent's agents. Under these circumstances, we cannot accept the destruction of the records as convincing proof of a fraudulent intent to evade tax. Respondent also relies on petitioner's failure to heed the advice of Cohen, his accountant, to institute changes in the record-keeping. However, the evidence indicates that Cohen advised petitioner and his brother, Max Fogel, only "that their present records were not as concise as the Government would like to have them to be." Petitioner's failure to heed this advice is hardly evidence of a fraudulent intent. We hold that respondent has failed to prove that part of any deficiency for any of the taxable years was due to fraud. Additions to Tax Under Section 294(d) The petitioner has introduced no evidence indicating any error in the respondent's determination of additions to tax under sections 294(d)(1)(A) and 294(d)(2), and respondent's determination is approved. Statute of Limitations Petitioner's returns *189 for 1946 and 1947 were filed on February 26, 1947 and February 25, 1948, respectively, and respondent's deficiency notice for these years was mailed on July 24, 1952. Petitioner has affirmatively alleged the three-year statute of limitations as a bar to the deficiencies determined for these two years. Respondent's position is petitioner's returns for these years were false or fraudulent with intent to evade tax, and that the deficiency notice was therefore timely, under the provisions of section 276(a) of the 1939 Code. [2]
Respondent has failed to establish that petitioner's returns for 1946 and 1947 were fraudulent. Section 276(a) is inapplicable, and the deficiencies for 1946 and 1947 are barred by the statute of limitations. Decision in Docket Number 44016 will be entered for petitioner. Decision in Docket *190 Number 44017 will be entered under Rule 50. Footnotes
1. Rozman filed 3 returns for 1949, covering the periods January 1 to June 11, June 13 to October 8, and October 10 to December 31. The figures set forth above represent the totals reported for the 3 periods.↩
2. SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. * * *
SEC. 276. SAME - EXCEPTIONS. (a) False Return or No Return. - In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.↩